# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59857-4-II |
| Respondent, | |
| v. | |
| CURRY MITCHELL VANCURA, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—The trial court entered a pretrial domestic violence protection order prohibiting Curry Vancura from contacting his ex-wife, Crystal Vancura, after Vancura was arrested at her home for criminal trespass, stalking, harassment, and attempted residential burglary. The protection order prohibited Vancura from, among other things, contacting Crystal through a third party.[1]

While in jail awaiting trial, Vancura sold his truck to a friend. As part of the sale, Vancura explained he did not know where his truck was located because it had been left at Crystal's home when he was arrested, it might have been towed, and this was part of why he was offering a good deal on the truck. When his friend bought the truck, Vancura gave his friend Crystal's phone number and told the friend to call Crystal to figure out where the truck was. His friend called Crystal, and Crystal reported the call to the police.

---

[1] Because Vancura and Crystal Vancura share a last name, we refer to Crystal by her first name for clarity.

A jury found Vancura guilty of violating the protection order based on his friend's call to Crystal (Count VI). Vancura appeals, arguing that insufficient evidence supported the jury's guilty finding because the State failed to prove that he knowingly contacted Crystal through his friend. We agree that the State failed to prove that the friend's phone call was a contact *by* Vancura through his friend, and as a result, we reverse the conviction on Count VI and remand for resentencing.

FACTS

Vancura and Crystal were married for seven years and had a child together before they divorced. 2 RP at 618-19. Crystal is the primary caregiver for their daughter, who has significant special medical needs. Under their parenting plan, Vancura was entitled to video and phone calls with their daughter, as well as up to one visit a week.

The relationship between Vancura and Crystal was strained, and Vancura would frequently call and message her at inappropriate times, demanding to speak to or see their daughter and calling Crystal demeaning names. Crystal repeatedly told Vancura to stop threatening her and inappropriately contacting her. She also put up a "'No Trespassing'" sign in her yard to make it clear that Vancura was not welcome to show up at her home unexpectedly. 2 Verbatim Rep. of Proc. (VRP) at 622.

On May 2, 2024, Vancura called Crystal at 6:00 a.m. demanding to speak to their daughter and see her that day. Crystal explained that she was sleeping and that they had medical appointments after school that day. Vancura accused Crystal of lying. Within an hour of Crystal and their daughter arriving home that evening, Vancura showed up at Crystal's house. Crystal told Vancura to leave and that he was not welcome there. Vancura told her he would go across the

street and watch her, which he initially did. After 10 to 15 minutes, Vancura parked his car, blocking Crystal's driveway, and began walking between his car and her house, yelling at her. Crystal called 911 and the police arrived at the house shortly thereafter.

Police officers found an AR-15 on the backseat of Vancura's truck and a long knife in the center console. Vancura was placed under arrest and taken to jail. Vancura's truck was eventually towed from Crystal's driveway.

Following Vancura's arrest, the trial court entered a pretrial domestic violence no-contact order. The no-contact order prohibited Vancura from

> "[C]ausing or attempting to cause physical harm, bodily injury, assault, including sexual assault, and from molesting, harassing, threatening, or stalking a protected person, coming near and *from having any contact whatsoever in person or through others by phone, mail, or any means, directly or indirectly*, except for mailing or service of process of court documents by a third party or contact by defendant's lawyers with a protected person other than, entering or knowingly come within, knowingly remaining within 500 feet of the protected person's residence, school, daycare, or workplace."

2 VRP at 760 (emphasis added) (quoting record).

On May 12, 2024, which was their daughter's birthday, Crystal received three phone calls from a number she did not recognize. She did not answer the calls; an automated recording from the Kitsap County Jail was left on Crystal's voicemail after each call. Crystal believed the calls were from Vancura and reported them to the police. Call logs from the jail showed that Vancura placed the calls.

On May 14, Vancura called his friend, Charles Barnett, from the jail on a recorded line. Vancura asked Barnett if he was looking to purchase a truck explaining, "[D]o you want a hell of a deal . . . on a truck? . . . But it comes with a couple of stipulations. One, it's probably towed, and the other one is that it shifts, but I broke the shift slider the day I got arrested, and I'd fix that if

3

you buy it." 2 VRP at 741-42. Vancura offered to sell the truck to Barnett for $1,000 and Barnett agreed. Vancura asked Barnett to pay $200 toward his storage unit and $800 for the rest of the truck. Vancura continued, "And my lawyer is going to find out where it is. Otherwise, I'm not allowed to contact my ex-wife. . . but it was on her property. And if I gave you her number, you could call and say that you bought the truck from me and you need to know where it is so you can go get it." 2 VRP at 743. Barnett agreed to the deal, and the call ended.

The following day, Vancura called Barnett again. During the call, Vancura gave Barnett Crystal's phone number to call her about the truck. Vancura instructed Barnett, "That's my . . . ex-wife[]. . . Just tell her that you . . . bought [Vancura's] truck and you need to find out where it is so that you can get your truck, right?" 2 VRP at 725. Barnett agreed, "Okay. Yep. Yep, I'll do that." *Id.* Vancura told Barnett, "Congratulations on your truck, dude. I'm glad you're going to get it. That's cool." *Id.*

Later that day, Barnett called Crystal.

The State charged Vancura with Count I: stalking with a weapon (domestic violence), Count II: harassment (threat to kill) (domestic violence), Count III: driving without an ignition interlock when registered, Count IV: second degree criminal trespass (domestic violence), Counts V and VI: two counts of violation of a court order (domestic violence), and Count VII: attempted residential burglary (domestic violence). The second violation of a court order charge (Count VI) was based on the May 15 phone call to Crystal from Barnett about the truck.

Vancura pleaded guilty to driving without an ignition interlock device when registered and proceeded to a jury trial on the remaining charges.

Barnett did not testify at trial, but recordings of both calls between Vancura and Barnett were played for the jury. Crystal's testimony about the call from Barnett was limited. She explained that she received a phone call from a person she did not know who was named Charles or Charlie and he was a friend of Vancura's. Vancura made a hearsay objection to any discussion of the content of the call, and the trial court sustained the objection. Crystal confirmed that she had never shared her phone number with this person, she did not know him, and the person had called her for a specific reason. The State had no further questions about the phone call.

Vancura testified that he had asked his attorney about how to find his truck, which he believed had been impounded following his arrest, and that he wrote a letter to the sheriff's department. He acknowledged giving Crystal's phone number to Barnett, but he explained that he had "no message for her. Just for [Barnett] to find . . . what would be his truck." 2 VRP at 939. During cross-examination, Vancura testified that he did not know for sure that the truck had been impounded until after Barnett called Crystal and Crystal reported the call to the police. Vancura reiterated, "I wasn't trying to directly talk to her about anything or give her a message." 3 VRP at 1020; *see also* 3 VRP at 1030.

The trial court instructed the jury:

> To convict the defendant of the crime of violation of a court order as charged in Count VI, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about May 15, 2024, there existed a no-contact order applicable to the defendant;
>
> (2) That the defendant knew of the existence of the order;
>
> (3) That on or about said date, the defendant knowingly violated a restraint provision of the order prohibiting contact with a protected party; and

(4) That the defendant's act occurred in the State of Washington.

Clerk's Papers (CP) at 144. Only the third element is disputed here. The trial court also instructed

the jury about knowledge:

> A person knows or acts knowingly or with knowledge with respect to a fact or circumstance when he or she is aware of that fact or circumstance. It is not necessary that the person know that the fact or circumstance is defined by law as being unlawful or an element of a crime.
>
> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.
>
> When acting knowingly is required to establish an element of a crime, that element is also established if a person acts intentionally.

CP at 133.

The State argued in closing that Vancura knew when he gave Crystal's phone number to

Barnett, that the truck had already been towed because he referred to it being towed in one of the

calls. The State also argued,

> Now, you won't see anywhere in your instructions and, up there, you don't see anything that says that the contact that he caused to happen needed to be about him or about the case or about anything in particular. It's he had another person contact her, and he did that in violation of that order.

3 VRP at 1118. In his closing argument, Vancura argued:

> He wasn't contacting - - asking someone to contact her for him. He's basically sold his truck. And that's the last place he knew that it was, and that's - - figured, that's where you go to get that. Here's the number, call her, whatever, figure it out.
>
> But it's not a message that he's passing on his behalf. So he's not guilty of [no-contact order] violation there. He knows he can't have contact. He told you guys that. He recognized it.

3 VRP at 1130-31. In closing, defense counsel also acknowledged Vancura was guilty of second

degree criminal trespass because he blocked Crystal's driveway with his truck.

6

The jury found Vancura not guilty of stalking, harassment, and attempted residential burglary. The jury found Vancura guilty of second degree criminal trespass and both counts of violation of a court order.

Vancura appeals his conviction for Count VI, violation of a court order that was based on Barnett's call to Crystal about the truck.

ANALYSIS

Vancura argues that insufficient evidence supported his conviction for Count VI, violation of a court order that was based on Barnett's phone call to Crystal. Specifically, he argues the State presented no evidence that Vancura knowingly contacted or attempted to contact Crystal through Barnett.

We review sufficiency of evidence claims for whether, viewing the evidence in the light most favorable to the State, "'any rational trier of fact could have found guilt beyond a reasonable doubt.'" *State v. Frahm*, 193 Wn.2d 590, 595, 444 P.3d 595 (2019) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). A sufficiency of the evidence challenge admits the truth of the State's evidence and all reasonable inferences drawn therefrom. *Salinas*, 119 Wn.2d at 201. A reviewing court defers to the trier of fact on the persuasiveness of the evidence. *State v. Ague-Masters*, 138 Wn. App. 86, 102, 156 P.3d 265 (2007).

Vancura was convicted under RCW 7.105.450 with violating a domestic violence protection order issued under chapter 10.99 RCW. To convict Vancura, the jury had to find beyond a reasonable doubt that he knew of the existence of a no-contact order and he knowingly violated a restraint provision of the order prohibiting contact with Crystal. In the context of a no-contact order violation, Division One has held that inadvertent or accidental contact is not enough to

7

support a conviction. *State v. Briggs*, 18 Wn. App. 2d 544, 550-51, 492 P.3d 218 (2021). "[N]ot only must the defendant know of the no contact order; [they] must also have intended the contact." *State v. Sanchez*, 30 Wn. App. 2d 402, 406-07, 544 P.3d 1107 (2024) (alterations in original) (quoting *State v. Clowes*, 104 Wn. App. 935, 944-45, 18 P.3d 596 (2001)). And here, the trial court instructed the jury that when acting knowingly is required to establish an element of a crime, that element is also established if a person acts intentionally. The defendant's knowledge is a question for the trier of fact. *Id*. at 407.

Vancura contends that the evidence was insufficient to prove that he "knowingly violated a provision of the no-contact order or[,] in other words, that [Vancura] intended contact with Crystal through [Barnett]." Br. of Appellant at 11. But here, there is no question that Vancura acted purposefully when he gave Crystal's number to Barnett and told Barnett to call her. Vancura's actions were deliberate and nonaccidental. And Vancura referred to the fact that he knew he could not contact Crystal in his conversation with Barnett. Sufficient evidence therefore permits a rational trier of fact to find that Vancura both knew of the no-contact order and he acted knowingly when he provided Barnett with Crystal's phone number.

However, the question remains whether sufficient evidence supported a finding that Vancura's actions constituted *contact* from Vancura to Crystal through a third party, as prohibited by the protection order. The only evidence about the content of Barnett's phone call to Crystal shows Barnett contacted Crystal for his own interests—determining the whereabouts of the truck he had just agreed to purchase. The phone call was contact between Barnett and Crystal. To be sure, Vancura facilitated the contact between Barnett and Crystal by providing her phone number. The court order prohibited Vancura from contacting Crystal through a third party, but it did not

prohibit a third party from contacting Crystal for their own purposes, for example, to find out the location of the truck Barnett was buying.

There is no evidence that Barnett's phone call to Crystal amounted to contact *by* Vancura through a third party. The record is silent as to exactly what Barnett said when he called Crystal. Thus, there is nothing to suggest that Barnett conveyed that he was contacting Crystal because Vancura told him to or on Vancura's behalf.

Accordingly, the evidence was insufficient to support a finding that Vancura knowingly violated the protection order by indirectly contacting Crystal through Barnett and Vancura's conviction must be reversed.

## CONCLUSION

We reverse Vancura's conviction for Count VI, violation of court order and remand for resentencing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

PRICE, A.C.J.

CRUSER, J.